## HARDWOOD PACKAGE CO. v. COURTNEY CO.

(Circuit Court of Appeals, Fourth Circuit. April 3, 1918.)

No. 1569.

1. SALES ⟨⟩53(1)—CONTRACT—QUESTION FOR JURY.

In an action by the seller of hardwood staves for the buyer's failure to accept, whether there was complete agreement between the parties as to the terms of the contract of sale *held* a question of fact for the jury.

2. CONTRACTS ⟨⟩35—FORMAL CONTRACT.

Apart from statute of frauds, if minds of contracting parties meet at all points, and their agreement of sale is fully set forth in unsigned memorandum, which they both accept as correct, binding obligation results, though it was their intention to have formal contract prepared and signed.

3. CONTRACTS ⟨⟩35—SIGNATURE OF FORMAL CONTRACT.

An unsigned contract cannot be enforced by either of the parties, however completely it may express their mutual agreement, if it was also agreed that the contract should not be binding until signed by both.

4. SALES ⟨⟩53(1)—SIGNATURE OF FORMAL CONTRACT—QUESTION FOR JURY.

In action by seller of hardwood staves for buyer's refusal to accept, whether it was intention of both parties that contract be reduced to writing and signed by both before it became binding, *held* question of fact for jury.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Action by the Courtney Company against the Hardwood Package Company. To review judgment for plaintiff, defendant brings error. Reversed.

D. M. Easley and D. E. French, both of Bluefield, W. Va., for plaintiff in error.

W. E. R. Byrne, of Charleston, W. Va. (Linn & Byrne, of Charleston, W. Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and McDOWELL, District Judge.

KNAPP, Circuit Judge. The questions deemed controlling in this case will appear from a comparatively brief statement, without reciting at length the somewhat complicated facts out of which the litigation arose. In the court below the Courtney Company, defendant in error, was plaintiff, and the Hardwood Package Company, defendant, and they will be so designated in this opinion. These parties, through their respective agents, entered into negotiations in the latter part of 1912 for the sale by plaintiff and purchase by defendant of a large quantity of barrel staves. On the 21st of December, at defendant's place of business in Philadelphia, an agreement appears to have been reached

with a representative of plaintiff. A contract was accordingly drawn up in duplicate, on the printed form used by defendant, and both copies sent by mail unsigned to plaintiff at Charleston, W. Va., for its signature. The plaintiff, however, declined to execute this contract, and instead prepared a contract of its own, dated January 1, 1913, which was signed in duplicate by its president and mailed to defendant on the 9th of that month. The defendant received this contract in due course, but did not sign it. On the 1st of May it was returned unsigned, with a letter stating that "we have canceled all negotiations, for staves and heading, that we may have had with you," and refusing in effect to take the staves in question. To this the plaintiff replied in substance that a binding contract had been made, that it had at all times been ready and willing to perform the same, that the market price of staves had gone down materially, and that if defendant persisted in its refusal it would sell the staves for the best price then obtainable and hold the defendant responsible for any resulting loss.

Some three years later, in March, 1916, this suit was brought to recover, as damages for alleged breach of contract, the difference between the amount for which plaintiff sold the staves to other parties, after defendant refused to take them, and the amount that plaintiff would have received at the price named in the contract claimed to have been made; that is, the contract prepared by plaintiff and sent to defendant in January, 1913, as above stated. The special count of the declaration is on that contract, set out in full in the pleading, which is asserted to be valid and enforceable, because it expresses the actual agreement of the parties and was accepted as such by the defendant. At the trial, and under its plea of nonassumpsit, the defendant gave evidence tending to support two defenses: (1) That there was no complete agreement between the parties, because their minds never met on any contract, verbal or written; and (2) that it was the understanding and intention of plaintiff and defendant alike that the contract for which they were negotiating should not be binding, unless reduced to writing and signed by both parties. The jury found for the plaintiff for the full amount of its claim, and defendant comes here on writ of error.

[1, 2] It is enough to say that in our opinion the first of these defenses was not established as matter of law. True, certain acts and declarations of plaintiff were shown which seem quite inconsistent with a belief on its part that a definite contract had been made, and apparently the jury would have been warranted in finding that the negotiations in question went no further than proposals by each side, first the defendant, and later the plaintiff, which the other side was not willing to accept. But in view of the explanations of plaintiff, and taking into account all the evidence upon this issue, we think it became a question of fact which was properly submitted to the jury. Apart from the statute of frauds, which is not set up in this case, it is well settled that if the minds of contracting parties meet at all points, and their agreement is fully set forth in an unsigned memorandum, which they both accept as correct, a binding obligation results, although it was their intention to have a formal contract prepared and signed. Jenkins &

Reynolds Co. v. Cement Co., 147 Fed. 641, 77 C. C. A. 625; Whitted & Co. v. Fairfield Cotton Mills, 210 Fed. 725, 128 C. C. A. 219; Morton v. Witte, 147 App. Div. 94, 131 N. Y. Supp. 778; Drummond v. Crane, 159 Mass. 577, 35 N. E. 90, 23 L. R. A. 707, 38 Am. St. Rep. 460.

[3] But it is equally well settled that an unsigned contract cannot be enforced by either of the parties, however completely it may express their mutual agreement, if it was also agreed that the contract should not be binding until signed by both of them. In the leading case of Mississippi & Dominion Steamship Co. v. Swift, 86 Me. 248, 29 Atl. 1063, 41 Am. St. Rep. 545, it is said:

"When parties enter into a general contract, and the understanding is that it is to be reduced to writing, or if it is already in a written form that it is to be signed before it is to be acted on, or to take effect, it is not binding until it is so written or signed. * * * When correspondence indicates that a formal draft of a contract was in the minds of the parties, or at least in the mind of the party sought to be charged, as the only authoritative evidence of a contract, and that he did not have, nor signify, any intention to be bound until the written draft had been made and signed, he is not bound until such draft is duly made and signed. * * * The burden of proof is upon the party claiming the completion of the contract before the written draft thereof is signed."

To the same effect are Ambler v. Whipple, 87 U. S. (20 Wall.) 546, 22 L. Ed. 403, Hennessy v. Bond, 77 Fed. 403, 23 C. C. A. 203, Spinney v. Downey, 108 Cal. 666, 41 Pac. 797, and Morrill v. Mining Co., 10 Nev. 125.

[4] In the instant case, as already said, it was one of the defenses that neither the contract sued upon nor any other contract for the purchase of staves was to take effect and be binding until signed by both parties, and accordingly the defendant asked the following instruction:

"The court instructs the jury that, if you believe from the evidence in this case that it was the intention of the plaintiff and defendant, in their negotiations respecting the contract for staves, that it was to be reduced to writing and signed by both parties before it became a binding contract, then you will find for the defendant."

This instruction was refused on the ground, as appears from the record, that it was "misleading in its terms under the evidence." How this could be said is not apparent. The proposition of law involved in the request is undoubtedly sound, and it seems clear to us that the evidence on this issue presented a question of fact to be passed upon by the jury. Two references will suffice. As late as February 14th plaintiff wrote defendant:

"We have never received the copy of the contract for staves sent you some time ago. Not having heard from you, we are shipping some of these staves to other parties."

And on the trial of the cause Samuel Courtney, then president of the plaintiff company, testified:

"Q. And the reason you didn't commence shipping staves is because they didn't sign the contract? A. That is right. Q. And you knew that the con-

tract had to be signed by Mr. Pew? A. Yes, sir. I knew it was supposed; he said some place that Pew would have to sign it."

This of itself was enough, as we think, to raise a question for the jury. And the obvious effect of refusing the requested instruction was to shut out an independent defense, which, if sustained by a finding of fact, would have defeated the plaintiff's action. Whether or not it was understood throughout the negotiations that the parties would be bound only by a signed agreement was a distinct and vital issue, which, on the proofs made, was plainly for the jury to determine. We cannot sustain defendant's contention that the evidence on this issue was so conclusive as to require a directed verdict in its favor; but we are convinced, after careful study of the case, that the question here considered was a question of fact, which should have been submitted to the jury under proper instructions. The refusal to so submit it was therefore an error for which the judgment must be reversed.

As the remaining questions appear to be of little importance, and may not arise on another trial, we deem it unnecessary to make them the subject of discussion.

Reversed.